**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CANATXX GAS STORAGE LIMITED and CANATXX LNG LIMITED, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-1330 |
| SILVERHAWK CAPITAL PARTNERS, LLC, | § § § | |
| Defendant. | § § | |

**MEMORANDUM AND ORDER**

On February 1, 2006, plaintiffs Canatxx Gas Storage Limited and Canatxx LNG Limited (collectively, "Canatxx") filed a declaratory judgment action against defendant Silverhawk Capital Partners, LLC in Texas state court. Canatxx sought to preclude liability to Silverhawk for an "opportunity cost fee" for capital formation work related to a prospective loan that Canatxx ultimately failed to obtain. Canatxx initially sent the original state-court petition to the Texas Secretary of State on February 2, 2006, but the mail was returned as undeliverable. Canatxx personally served Silverhawk through the Texas Secretary of State on February 24, 2006.

On February 23, 2006, Silverhawk filed suit against Canatxx Gas Storage Limited and Canatxx LNG Limited in the United States District Court for the District of Connecticut, alleging breach of contract, breach of the duty of good faith and fair dealing, and violation

of the Connecticut Unfair Trade Practices Act, based on the same underlying facts and dispute. On March 9, 2006, Canatxx amended its Texas state-court petition to include an updated business address for Silverhawk. On March 31, 2006, the Secretary of State of Texas served the state court petition upon Silverhawk by certified mail. On April 17, 2006, Silverhawk removed the Texas state-court action to this court on the basis of diversity jurisdiction.

Silverhawk has filed a motion to dismiss this case, stay this case pending resolution of the Connecticut case, or transfer this case to Connecticut for consolidated treatment. (Docket Entry Nos. 8, 9). Canatxx opposes the motion, contending that this case should proceed under the "first-filed rule." (Docket Entry No. 11). Silverhawk has replied, (Docket Entry No. 13), and Canatxx has filed a surreply, (Docket Entry No. 14). After reviewing the motion and response, the pleadings, the record, and the applicable law, this court denies Silverhawk's motion to dismiss, stay, or transfer, finding that the case should proceed in Texas. The reasons are stated below.

## I.      Background

Canatxx Gas Storage Limited and Canatxx LNG Limited are privately held corporations based in the United Kingdom. Canatxx is involved in the permitting, design, construction, and development of international private power generation and natural gas projects. Silverhawk is a private investment company incorporated in Delaware. Silverhawk invests in management buyouts and private equity transactions in energy, natural resources,

and other business sectors.  For the past several years, Canatxx has been involved in developing a natural gas storage project in the United Kingdom.  This dispute stems from a proposed investment in this project.

In mid-2005, Canatxx retained investment broker Rob Blackmon, who is based at the UVEST Financial Services offices in Jackson, Mississippi, to help it raise investment capital. On May 19, 2005, Blackmon contacted Ted Gardner, an investor based in Charlotte, North Carolina, about investing in Canatxx.  On May 25, 2005, Gardner and three other individuals incorporated Silverhawk in Delaware.  Gardner expressed an interest in the Canatxx investment.  On June 16, 2005, Gardner and Mark Demetree, an Overland Park, Kansas resident and Silverhawk principal, met with Canatxx executives at the Houston, Texas airport.  On June 28, 2005, the parties, including two other Silverhawk principals, James Cook and David Scanlan, both of whom reside in Greenwich, Connecticut, met again in Houston.  After these meetings, the parties continued to discuss the investment opportunity by telephone and email.

On August 5, 2005, Silverhawk and Canatxx entered into a "Summary of Preliminary Indicative Terms and Conditions," referred to as the "Term Sheet."  Under the Term Sheet, which Silverhawk sent to Canatxx in Houston, Silverhawk proposed to invest £ 20 million in Canatxx and help raise another £ 15 million from other investors.  Approximately one month later, the deal between the parties fell through.  Silverhawk claimed that Canatxx owed it a £ 3 million "opportunity cost fee" as provided in the Term Sheet, in addition to

Silverhawk's costs and expenses for the due diligence and other work it performed in anticipation of, and preparation for, the transaction. The parties engaged in negotiations over this amount, with Canatxx ultimately refusing to pay anything to Silverhawk. On February 1, 2006, Canatxx filed this lawsuit in Texas state court. On February 15, 2006, Silverhawk registered with the Connecticut Secretary of State to do business in that state. On February 23, 2006, Silverhawk filed suit in the United States District Court for the District of Connecticut, seeking recovery of the disputed fees. Silverhawk later removed the Texas state court case to this court and now seeks a dismissal or a stay of this case, or its transfer to Connecticut so that Silverhawk may pursue its claims against Canatxx in that forum.

## II.    The Motion to Dismiss for Failure to State a Claim: The Standing Issue

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

Silverhawk argues that Canatxx had no standing to sue in Texas state court because it had not registered to do business in the State. Silverhawk cites Texas Business Organizations Code § 9.051, which states that, "[a] foreign filing entity or the entity's legal

representative may not maintain an action, suit, or proceeding in a court of this state, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in the state unless the foreign filing entity is registered in accordance with this chapter." TEX. BUS. ORGANIZATIONS CODE § 9.051. Section 9.251 of the Texas Business Organizations Code, however, exempts "transacting business in interstate commerce" from Section 9.051's definition of "transaction of business in the state." TEX. BUS. ORGANIZATIONS CODE § 9.251(9). The allegations of Canatxx's complaint relate to the transacting of business in interstate commerce. Canatxx had the authority to sue in Texas state court. The motion to dismiss on this ground is denied.

## III.   The Motion to Dismiss Under the Declaratory Judgment Act or to Transfer: The Issue of Which Court Should Hear the Case

Canatxx originally filed this lawsuit seeking a declaratory judgment under Texas law. The parties agree that this case should be analyzed under the federal Declaratory Judgment Act. Silverhawk contends that this court should use its discretion under the Declaratory Judgment Act to dismiss this case in favor of the Connecticut lawsuit.

"The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citing *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)). The "first-to-file" rule is grounded in principles of comity and sound judicial

5

administration. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *W. Gulf*, 751 F.2d at 728. "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* at 729; *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–20 (1976).

The Declaratory Judgment Act "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *The Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (citations omitted). "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* The fundamental question in deciding how the Court should exercise its discretion is "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 495 (1942).

In *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000), the Fifth Circuit set out a three-step process for courts to follow in deciding whether to dismiss a declaratory

judgment action. "A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams*, 343 F.3d at 387 (discussing *Orix*, 212 F.3d at 895). If the action is justiciable and is within the court's authority, the court must determine how best to exercise its authority.

A declaratory judgment action is justiciable if "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Venator Group Specialty, Inc. v. Matthew/Muniot Family, L.L.C.*, 322 F.3d 835, 838 (5th Cir. 2003). This factor is not in doubt here: Silverhawk and Canatxx disagree over the parties' obligations under the Term Sheet; Silverhawk claims that it is owed $3 million plus expenses; Silverhawk threatened to sue—and ultimately did sue—Canatxx for recovery of these funds; Canatxx reasonably feared litigation at the time it filed this lawsuit in Texas state court. The declaratory judgment action in this court is justiciable.[1]

Because the dispute is justiciable and this court has the authority to grant the declaratory relief Canatxx requests, this court must decide whether to exercise its discretion to retain the case or dismiss it. In *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), the Fifth Circuit identified seven nonexclusive factors for a federal court to consider

---

[1] The Fifth Circuit has held that "a district court does not have authority to consider the merits of a declaratory judgment action when (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings." *Sherwin-Williams Co.*, 343 F.3d at 388 (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993)). Because the Texas state court lawsuit was the first-filed suit, this element of the analysis is unnecessary.

when deciding whether to dismiss a declaratory judgment action.  The *Trejo* factors are: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.  *Id.* at 590–91; *see also Sherwin-Williams*, 343 F.3d at 388.

Silverhawk argues that the *Trejo* factors should be analyzed even though there is no pending state court action.  As another court in this circuit recently stated, the "pendency of a state court action is not dispositive of the first [*Trejo*] factor, and the fact that a parallel proceeding is pending in a sister federal court should be taken into consideration."  *Watkins Strategy & Res. Group v. WLC, LLC*, __ F. Supp. 2d __, 2006 WL 1431620, *3 (S.D. Miss. May 23, 2006).  As the Fifth Circuit explained in *Sherwin-Williams*, the analysis is significantly affected by the fact that no state-court action is pending elsewhere.  In *Sherwin-Williams*, the court identified three overarching concerns underlying the *Trejo* inquiry: the proper allocation of decision-making between state and federal courts, fairness, and efficiency.  *Id.* at 390–91.  In discussing efficiency, the court explained the importance of

avoiding piecemeal litigation in state and federal court in part "because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues." *Id.* at 391. Two of the three concerns analyzed in *Trejo* focused on the concerns presented by litigation pending in both a federal and state forum. The absence of this issue in this case makes the *Trejo* analysis straightforward.

Silverhawk seeks dismissal or transfer in favor of another federal forum. Silverhawk argues that Canatxx engaged in "forum shopping" and filed this suit in anticipation of Silverhawk's suit as a basis for deviating from the first-to-file rule and deferring to the Connecticut forum it chose. As the Fifth Circuit has noted, every time a lawsuit is filed, a forum choice is made. Dismissing a declaratory judgment action or deciding not to follow the first-filed rule requires more than an accusation of "forum-shopping." "Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.' " *Sherwin-Williams*, 343 F.3d at 391.

Silverhawk has not shown how this Texas forum is inappropriate, burdensome, or prejudicial so as to make the forum choice abusive. Silverhawk is protected from real or perceived unfairness of a state-court forum by the fact that it could, and did, remove the case to federal court. *See Sherwin-Williams*, 343 F.3d at 399 (noting that "the traditional justification for diversity jurisdiction" is "to protect out-of-state defendants"); *see also AXA Re Property & Casualty Ins. Co. v. Day*, 162 Fed. Appx. 316, 321 (5th Cir. 2006) ("[A] court

is more likely to find a plaintiff engaged in impermissible forum shopping where the federal

action [as opposed to the state action] would change the applicable law.") (citing *Sherwin-*

*Williams*, 343 F.3d at 397, 399; *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599,

602 n.3 (5th Cir. 1983)).   Forum selection was not pursued in this case so as to require

dismissing this lawsuit in favor of another federal-court case.

Nor has Silverhawk shown why dismissing this case in favor of the Connecticut

lawsuit would be more convenient to the parties or witnesses.   Two Silverhawk principals

are located in Connecticut, but Canatxx is a United Kingdom-based company and the

witnesses and documents are in several areas around the country, including Kansas, North

Carolina, and the two forum choices, Texas and Connecticut.[2]   Canatxx personnel located

in Houston signed the Term Sheet and the parties met at least twice to negotiate the contract

in Houston.   Although trying this case in Connecticut may prove slightly more convenient

to some of Silverhawk's witnesses, this showing is not sufficient to warrant dismissal of the

case under *Trejo*.   Resolving this case is going to require travel and inconvenience, whether

the case is tried in Texas or Connecticut.   This factor does not support dismissal of the

lawsuit.

---

[2]   Silverhawk argues that this case should be dismissed because Connecticut is "geographically closer" to Canatxx's United Kingdom headquarters than Texas.   (Docket Entry No. 9 at 13).   Practically speaking, this is untrue—a quick internet search reveals that one could fly directly from London to Houston in ten hours and ten minutes while the shortest flight between London and New Haven, where the Connecticut lawsuit would be tried, would require a change of planes and a total travel time of eleven hours and thirty-five minutes.

Silverhawk raised Connecticut state-law claims in the Connecticut suit, but there is no reason this court would be unable to apply Connecticut law to resolve those claims in this case. The Connecticut action is not more inclusive of all issues surrounding the dispute between the parties, which would support transfer. *Cf. Watkins Strategy & Res. Group*, 2006 WL 1431620, at *3.

The "judicial economy" *Trejo* factor does not tip the scales in favor of dismissal or transfer. This case began before the Connecticut case and the Connecticut case has not moved faster than this case. Consolidating all the litigation in a single court will serve judicial economy and result in more efficient trial management, whether the Connecticut case is consolidated into this case or this case is consolidated into the Connecticut case. In light of the other factors, however, there is no basis to deviate from the first-to-file rule by dismissing this case or transferring it to Connecticut.

## IV.    Conclusion

Silverhawk's motion to dismiss, stay, or transfer is denied.

SIGNED on July 14, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge